## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION - PLANO

ESTATE OF MELVIN NOBLE, JR.          :
                                     :
    Plaintiff,                   :
                                     :
      vs.                     :          CIVIL ACTION # 4:23-cv-00716
                                     :          _____
                                     :
RAY GENE BOLLIN, Jr. d/b/a ABSOLUT   :
PRODUCTION RECORDING STUDIOS         :
                                     :
    Defendant                    :          Jury Trial Demanded
                                     :

### PLAINTIFF'S ORIGINAL COMPLAINT

PLAINTIFF, The Estate of Melvin Noble, Jr., by and through its undersigned attorney, respectfully alleges as follows for its complaint against Defendant Ray Gene Bollin.

### PARTIES

1.     Plaintiff Estate of Melvin Noble, Jr. ("Plaintiff" or the "Estate") is the legal owner and successor of the rights and interests of award-winning rap music artist, investor, entrepreneur, and philanthropist Melvin Abdul Noble Jr., professionally known as "Mo3." Probate of the Estate is taking place under the jurisdiction of the Collin County Probate Court No. 1 in McKinney, Texas (the "Probate Court").

2.     Defendant Ray Gene Bollin, Jr. ("Defendant" or "Bollin") a/k/a/ "Drop" and d/b/a Absolut Production Recording Studios is an individual believed to be residing in Dallas County, Texas.  Upon information and belief Bollin may be served at his last known address at 9817 Walnut Street, Apt. 102, Dallas, Texas 75243, or wherever he may be found.

### NATURE OF THE CLAIMS

3.     This is an action for declaratory judgment and ancillary relief arising under the copyright laws of the United States, 17 U.S.C. § 101 et seq.; Rule 57 of the Federal Rules of Civil Procedure; and 28 U.S.C. §§ 2201. As alleged herein, a real, substantial and immediate controversy

is presented regarding the rights, liabilities, status and legal relations of the parties in connection with the authorship and ownership of various musical compositions and sound recordings. Declaratory relief, as requested herein, is necessary to preserve rights that otherwise may be lost or impaired, and is intended to terminate controversy and remove uncertainties between the parties.

4.      In addition to the foregoing, the Estate brings federal claims for copyright infringement and violation of the Digital Millennium Copyright Act; and pendent state law claims for breach of contract, conversion and unauthorized use of name, likeness and voice under Tex. Prop. Code § 26.013.

### JURISDICTION AND VENUE

5.      This court has subject matter jurisdiction over this action under 17 U.S.C. §§ 101 *et seq.* (actions arising under the copyright laws); 28 U.S.C. §§ 1331 (federal question) and 1338 (exclusive original jurisdiction over copyright claims).  The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the Eastern District of Texas, Sherman Division (Plano, Collin County, Texas) is where a substantial part of the events giving rise to the claims occurred, including the authorship of the musical compositions at issue and the probate of the Estate. Venue is also proper under 28 U.S.C. §1400 because Defendant may be found in this District.

### BACKGROUND FACTS

**A.      MELVIN ABDUL NOBLE JR. P/K/A MO3'S CAREER**

7.      Melvin Noble, Jr. ("Noble") was an acclaimed North Texas hip-hop artist from McKinney, Texas whose career was cut tragically short when he was murdered in November, 2020. Noble was known for his hard-knock success story and vast musical talent as a rapper, singer, songwriter, actor, producer, and entrepreneur.

8.      In 2013, Noble released his debut single "Hold Ya Tongue," which garnered him widespread attention as an up-and-coming Texas hip-hop artist. The video for "Hold Ya Tongue" has been viewed almost 10 million times on YouTube.

9.      Noble leveraged his musical achievements into a popular record label, "H$M Music," and several other lucrative ventures that helped establish "Mo3" as one of the most recognized and valuable brands in the entertainment industry.

10.     Noble also achieved notable success as an actor and is featured in several motion pictures currently in production.

11.     Following his 2013 debut, Noble released several albums and numerous singles— all featuring his signature rhythm and blues singing and rap style. In 2019, Noble signed with Empire Distribution, Inc. (hereinafter, "Empire"), a San Francisco based record label whose artists include Snoop Dog and Kendrick Lamar. To date, Noble has sold more than 1 million records worldwide.

**B.      RAY GENE BOLLIN**

12.     Defendant Ray Gene Bollin is a recording engineer and owner of North Texas digital recording studio Absolut Production Recording Studios (hereinafter, "Absolut Studios").

13.     For years, Noble used Bollin's studio to record vocal performances (hereinafter the "Vocal Tracks") of his previously-written musical compositions (hereinafter the "Musical Compositions") over previously-created instrumental tracks that Noble brought into the studio (hereinafter, the "Instrumental Tracks"). During recording sessions for the Vocal Tracks Bollin's role consisted solely of setting up a microphone and pushing the record button, and those purely technical tasks were performed under Noble's specific direction, guidance and control. After recording was complete, Bollin's digital music files containing the Vocal Tracks and Instrumental Tracks (hereinafter, the "Music Files") were either stored on Bollin's computer hard drives for

later use or forwarded to other engineers for mixing and mastering.[1] Notably, Bollin didn't perform any mixing or mastering himself; and as mentioned, he had nothing to do with the creation of the Musical Compositions or Instrumental Tracks.

14.     Bollin was paid in full for his engineering services, and over the course of his relationship with Noble, never once claimed any interest in Noble's musical works—that is, until he hatched a scheme to capitalize on the trove of Vocal Tracks stored on his computer hard drives.

## C.     MELVIN ABDUL NOBLE JR.'S DEATH

15.     In October, 2020, Noble instructed his manager Brandon Rainwater ("Rainwater") to retrieve all of his Music Files from Absolut Studios. Bollin confirmed that Rainwater was welcome to do so; however, a series of tragic events derailed those efforts, and vested responsibility for the recovery of the Music Files in a court appointed administrator.

16.     On November 11, 2020, in the prime of his life and career, Noble was viciously gunned down on a freeway in Dallas, Texas. Noble was survived by his three children, TreMonye Noble (age 6), Malaysia Noble (age 4) and Malia Noble (age 4), his mother Nichole Noble (hereafter "Ms. Noble"), and his father Melvin Noble, Sr.

17.     On or about December 16, 2020, Noble's family filed an Application to Determine Heirship and for Letters of Independent Administration in Collin County Probate Court No. 1, McKinney, Texas, in the matter styled *In the Estate of Melvin Noble, Jr.*, PB1-1844-2020 (the "Estate"). On December 17, 2020, the Probate Court issued Letters of Temporary Administration designating Daniel L. White, Esq. ("White") as Administrator. Among the powers granted to White was the power to carry on the operation of Noble's business, to take possession of all

---

[1] "Mixing is when an engineer carves and balances the separate tracks in a session to sound good when played together. While mastering a song means putting the finishing touches on a track by enhancing the overall sound, creating consistency across the album, and preparing it for distribution." Nick Messitte, *What Is the Difference Between Mixing and Mastering?*, Izotope (May 12, 2022), available at https://www.izotope.com/en/learn/what-is-the-difference-between-mixing-and-mastering.html (visited on March 30, 2023).

personal and business property, and to "identify, collect and preserve all of Decedent's intellectual property."

**D.    BOLLIN'S REFUSAL TO TURNOVER NOBLE'S MUSIC FILES**

18.    After Noble's death, his family attempted to facilitate White's recovery of Noble's Music Files from Absolut Studios. Initially, Bollin expressed sympathy for Noble's passing, and in February of 2021, confirmed that he had possession of the Music Files.[2] Bollin assured the Nobles that he wanted to return the Music Files to them, and invited Ms. Noble to Absolut Studios to take possession.

19.    For several weeks, Ms. Noble and various family members tried repeatedly to contact Bollin to arrange a date for pick-up of the Music Files—even traveling to Absolut Studios––but to no avail. Bollin had disappeared.

20.    Weeks later, Bollin resurfaced—finally returning Ms. Noble's calls, and stating that he intended to turn the Music Files over to the Estate's Administrator instead of Ms. Noble. Bollin asked Ms. Noble to have the Administrator contact him directly.

21.    On or about March 17, 2021, Administrator White provided Bollin with the Probate Court's Order authorizing him to take possession of the Music Files, and asked him to comply with the Order. In response, Bollin claimed to be represented by counsel, and advised White that he wouldn't turn over the Music Files unless subpoenaed to do so. When White asked Bollin to provide him with the name and phone number of his "attorney," Bollin declined to do so.

22.    On or about March 25, 2021, White obtained a subpoena from the Collin County Probate Court ordering Bollin to appear in court and turn over the Music Files; however, all attempts to serve Bollin failed, who by all appearances was intentionally avoiding service.[3]

---

[2] At the time he contacted Ms. Noble, Bollin informed her that he held over 400 of Noble's recordings.
[3] Defendant Bollin was sent a copy of the subpoena by text message but refused to make himself available for service of the subpoena.

White's numerous subsequent attempts to obtain Bollin's voluntary compliance with the Probate Court's orders and subpoena also failed.

23.    In the summer of 2021, White became further alarmed when he learned Bollin was attempting to sell some or all of the Music Files.

24.    On May 18, 2021, Bollin sent Ms. Noble a Mother's Day wish via text. Ms. Noble thanked him for the wish, but said "if you want to [make] me happy please give me my son's music. I am having to go through too much as is." Bollin responded "Peace Nichole. I would like to give you the files, however there is some unfinished business."

25.    In or around this same time, Bollin reached out to Noble's record company Empire, proposing a "sale" of a series of unreleased Mo3 recordings that he claimed to have in his possession (hereinafter, the "Unreleased Recordings").[4] Initially, Bollin requested payment of studio fees that he claimed were outstanding in the amount of $10,000 to $20,000, and agreed to deliver the Unreleased Recordings if those fees were paid. In reality, there were no fees owed because Noble paid Bollin in cash after each and every session, and in fact—Bollin never previously asserted any claims for unpaid studio fees to the Estate, or anyone else for that matter.

26.    In subsequent conversations with Empire, Bollin inflated his claims. In addition to claiming unpaid studio fees, he now claimed to be the "producer" of the Unreleased Recordings, and to have registered some or all of them with the U.S. Copyright Office.[5] Bollin then disappeared and was not heard from for months.

---

[4] It isn't clear whether the Unreleased Recordings are simply the unfinished recordings featuring the Instrumental Tracks and Vocal Tracks that Noble was storing at Absolut, or if Bollin has added anything to those recordings. Whatever the case, Bollin had (and has) no right to commercially exploit and/or create derivative works featuring the Instrumental Tracks, Vocal Tracks or Musical Compositions, which do not belong to him and in which he holds no copyrights.

[5] Documents filed with the U.S. Copyright Office reflect that between March 4, 2021 and June 6, 2021, Bollin did in fact submit copyright registration applications for at least 30 Unreleased Recordings—improperly identifying himself as the sole "author" with respect to 10 of them, and as Noble's "coauthor" for the remaining 20. McKinney Decl., ¶ 2. In all such applications, Bollin also falsely listed himself as the proper contact for rights and permissions. *Id.*

E.     **THE "SHAKEDOWN"**

27.     On April 13, 2022, Bollin's lawyer Raymond Mbala emailed Empire to propose a new round of discussions. Apologizing for the lengthy delay, Mbala requested a "face-to-face meeting with Empire in Dallas, Texas," and promised to "negotiate and finalize an agreement that [would] be mutually beneficial for all parties involved." Mbala noted that May 31, 2022 had been proclaimed "Mo3 Day in McKinney, Texas," and suggested a "joint release of a not-yet published Mo3 project on that date." Mbala concluded on a disingenuously upbeat note—affirming that his "client look[ed] forward to establishing and developing a working relationship with Empire to extend and uphold the legacy of such a talented artist and beloved friend." To the contrary, what Mbala was really proposing was the insertion of his client into a business deal in which he had no interest—either as an author or producer—and much less a "beloved friend."

28.     After reopening discussions, Mbala disappeared once again and was not heard from until August 2022. In the meantime, in late May 2022, the Estate negotiated and executed an amendment to Noble's recording agreement with Empire Records providing for the release of two-posthumous Mo3 albums that were (and are) intended to feature previously unreleased material—including selections from the Vocal Tracks and Musical Compositions.

29.     On August 24, 2022, Mbala resurfaced, apologizing for the "break in communication due to factors outside of [his] control." Mbala's correspondence suggested that he was aware of the amendment to Noble's recording agreement, and that he and his client smelled money. Mbala indicated that a business proposal was forthcoming and prefaced the offer with a statement regarding his client's "historical position as it relates to Empire's business dealings with Melvin Noble III, p/k/a 'Mo3.'" Mbala explained his client's "position" as follows:

> From a historical standpoint my clients would have preferred that the parties had come together prior to Empire investing in the signing, promoting, and mass distribution of Mo3 before securing any Master recordings. They are confident that this matter could have been resolved years ago with a simple phone call and a meeting. The appearance of a hasty decision to move forward with Mo3's project without engaging my clients has initiated a

downward spiraling chain, and quite frankly, to my clients, it appears that there was an attempt to disregard Absolut after many years of hard work and sacrifice…. Now that we are at this point, my clients want to be fully compensated for all of Drop's[6]/Absolut's contributions to Mo3's career from the moment he walked into Absolut Productions Studios in the Fall of 2012 through the time he … signed, or otherwise became affiliated with Empire Records. To this end, in the coming days, I will be forwarding a proposed settlement structure that my clients hope will help move a deal between Absolut and Empire to finalization.

30.     Contrary to Mbala's grandiose characterizations, Bollin's role in Noble's career was miniscule—consisting of pushing a button to record Vocal Tracks over pre-recorded Instrumental Tracks that would later be mixed and mastered by other engineers. More importantly, Bollin "sacrificed" nothing at all. He had already been "fully compensated" for his labor and was entitled to no further consideration.

31.      On September 19, 2022, Mbala finally presented Empire with a "deal memo" outlining his client's demands. Under the proposal, Bollin would purportedly "transfer" ownership of the Unreleased Recordings in exchange for the following:

- $20,820 for "production" (allegedly consisting of recording, mixing, mastering and arrangement) and studio time;

- $624,000 in "licensing fees" for 78 "previously released songs" and $6,500 per recording for the Unreleased Recordings (the quantity of which remained undisclosed)— *plus* a 25% royalty interest in *all* of the recordings;

- "Back royalties" to be "paid retroactively from all sales, downloads, streaming platforms, etc." of the 78 previously released recordings; and

- Credits to include RIAA Certifications, production and engineering credits, recognition in press releases, and a co-writer's credit.[7]

32.     On September 23, 2022, Empire's in-house counsel Mike Gallegus requested a list of the Unreleased Recordings in Bollin's possession. Mbala responded on October 11, 2022, with a list of 51 "unreleased single recordings" advising that they had all been copyrighted by Bollin,

---

[6] As discussed above, Bollin's alias is "Drop."
[7] Upon information and belief, this was the first time Bollin had ever suggested he was a co-writer of the Musical Compositions—each of which were written before Noble stepped foot into Bollin's studio to record the Vocal Tracks therefor.

with "all rights reserved."[8] At $6,500 per recording (under the proposed deal memo), the list confirmed that Bollin sought an *additional* $331,500 for the Unreleased Recordings, or a total of almost $1 million, *plus* back royalties and future royalties.

33.     Other than to request a track listing, Empire has not responded to Bollin's outrageous proposal, thereby prompting him to seek other avenues of opportunity. Most recently, Bollin and a "business manager" identified as "PD" contacted Ms. Jasmine Moore (the mother of one of Noble's children)—attempting to gain her assistance in independently exploiting the Unreleased Recordings. However, the Estate is presently administered solely by Mr. White, and Ms. Noble therefore has no authority to authorize Bollin's independent exploitation of the Unreleased Recordings.

## F.     SUMMARY

34.     To characterize Bollin's elaborate scheme to capitalize on the Estate's assets as an "overreach" does the term no justice. At the end of the day, he is in opportunistic interloper, seeking a multi-million-dollar payday in exchange for recordings and music files that do not belong to him—some of which have been falsely registered at the U.S. Copyright Office in Bollin's name.

35.     The Estate now brings this action for declaratory relief, injunctive relief, and damages.

### COUNT I:
### DECLATORY JUDGMENT – AUTHORSHIP/OWNERSHIP

36.     The Estate re-alleges and incorporates herein the foregoing paragraphs.

37.     Noble was the sole author and owner of the Vocal Tracks, and therefore the copyright owner of such works; which ownership has vested in the Estate through probate. Notwithstanding, Bollin—who acted solely as an engineer under Noble's guidance, direction and control—has improperly asserted authorship, ownership and control of at least 51 Unreleased

---

[8] Research suggests that only 30 of the Unreleased Recordings have been registered. *See* fn. 5, *supra*.

Recordings featuring the Vocal Tracks and is attempting to sell and/or directly exploit them for his own gain. A justiciable controversy therefore exists as to the rights, obligations, and status of the parties with respect to the Vocal Tracks, for which the Estate seeks remedy. Specifically, the Estate seeks a judicial declaration that (a) Noble was the sole author of the Vocal Tracks,[9] and (b) that the Estate has acquired Noble's copyright interests in the Vocal Tracks through probate.[10]

38.     In addition to the foregoing, Bollin claims a copyright interest in the Musical Compositions as a coauthor. The Estate contends that Bollin did not contribute in any way to the creation of the Musical Compositions and has no copyright interests therein as a coauthor. A justiciable controversy therefore exists as to the rights, obligations, and status of the parties with respect to the Musical Compositions, for which the Estate seeks a judicial declaration that Bollin has no authorship interests and/or copyrights.

### COUNT II:
### BREACH OF CONTRACT

39.     The Estate re-alleges and incorporates herein the foregoing paragraphs.

40.     The parties entered into an agreement whereby Noble paid Bollin to record Vocal Tracks under Noble's guidance, direction and control; and to store the Vocal Tracks and other Music Files until requested by Noble or his representatives. Noble performed under the agreement by paying for all services rendered. By his actions described above, Bollin has breached the agreement by (a) refusing to turn over the Vocal Tracks and Music Files, despite the Estate's demand therefor, (b) claiming authorship rights he does not possess, (c) claiming copyright ownership rights he does not possesses, and (c) demanding further payment for his services.

---

[9] For clarity, the Estate is not presently seeking any judicial declaration as to the authorship of the Instrumental Tracks or Unreleased Recordings.

[10] As ancillary relief, the estate also seeks a judicial declaration that the sound recording copyright registrations issued by the U.S. Copyright Office for the Unreleased Recordings were improperly registered in Bollin's name as author and/or coauthor, and should therefore be amended.

41.     Bollin's actions have proximately caused injury to the Estate in an amount to be proven at trial, which damages are continuing.  Said damages include actual damages (including benefit of the bargain damages), and consequential damages.

## COUNT III:
### CONVERSION

42.     The Estate re-alleges and incorporates herein the foregoing paragraphs.

43.     Defendant Bollin has exercised dominion, wrongfully withheld and converted to his use physical assets belonging to the Estate, including the Music Files.  Bollin has continued to deprive the Estate of these assets, despite repeated demands therefor. Bollin's conduct has been both willful and malicious. As a result, in addition to recovery of its right of access to (and control over) the property at issue, the Estate is entitled to recover exemplary damages to deter similar conduct by Bollin and others.

## COUNT IV:
### COPYRIGHT INFRINGEMENT

44.     The Estate re-alleges and incorporates herein the foregoing paragraphs.

45.     By his actions alleged above, Defendant Bollin (acting individually and/or by and through his agents and/or representatives) has infringed the Estate's federally registered copyrights. Upon information and belief, Bollin has copied and distributed one or more Unreleased Recordings featuring the Vocal Tracks and Musical Compositions for purposes of soliciting the sale thereof to one or more third parties, and in order to register the sound recording copyrights therein and thereto, and by doing so, has infringed the Estate's exclusive rights set forth in 17 U.S.C. § 106.

46.     In addition to, and/or in the alternative to committing direct copyright infringement, upon information and belief, Bollin is vicariously liable for any copyright infringement committed by his agents and/or representatives who copied and distributed the Unreleased Recordings because he had the right and ability to supervise and/or control the wrongful actions of those

individuals, and stood to derive a direct benefit therefrom by selling the Unreleased Recordings to one or more third parties, and is therefore vicariously liable for copyright infringement.

47.     In addition to and/or in the alternative to committing direct copyright infringement and/or vicarious copyright infringement, Bollin has contributorily infringed the Estate's copyrights. Specifically, by retaining one or more agents to shop[11] the Unreleased Recordings, and providing the Unreleased Recordings to said parties to facilitate the same, Bollin induced, caused and/or materially contributed to their unauthorized copying and/or distribution of the Vocal Tracks and Musical Compositions.

48.     Bollin's actions constituted willful infringement of the Estate's copyrights inasmuch as he knew, or had reason to know, that his actions constituted copyright infringement because he knew that he had no authorship or ownership rights in the Vocal Tracks and Musical Compositions, and copied and distributed them anyway, for personal gain.

49.     As a result of the foregoing, the Estate is entitled to actual damages plus the profits earned by Bollin; and/or statutory damages of up to $150,000 per work infringed, plus attorney's fees and costs of court. 17 U.S.C. §§ 504, 505.

## COUNT V:
## DMCA CLAIM

50.     The Estate re-alleges and incorporates herein the foregoing paragraphs.

51.     Upon information and belief, Defendant Bollin (acting individually and/or by and through his agents and/or representatives) violated Section 1202 of the DMCA by intentionally falsifying copyright management information with knowledge, or a reasonable basis to know, that his actions would induce, enable, facilitate, and/or conceal infringement. 17 U.S.C.S. § 1202. Specifically, Bollin filed applications for copyright registration falsely naming himself as sole

---

[11] "Shopping means presenting artists [masters] to record companies with the goal of securing a music recording or music publishing agreement — the proverbial 'deal.'" Abdo, Kenneth J., *Shopping Record Deals for Lawyers: A&R Approach and Ethics Issues*, 23 Ent. & Sports Law 3 (2005).

author of ten (10) Unreleased Recordings featuring the Vocal Tracks, and as coauthor of an additional twenty (20) Unreleased Recordings featuring the Vocal Tracks. McKinney Decl., ¶ 2.

52.     Upon information and belief, Bollin's actions were committed intentionally—for the purpose of enabling and/or facilitating Bollin's further infringement of the Estate's copyrights through the sale or transfer of the Unreleased Recordings to one or more third parties, including Empire.

53.     In addition to, and/or in the alternative to committing direct violations of the DMCA, upon information and belief, Bollin is vicariously liable for any direct violations of the DMCA committed by his agents and/or representatives who may have filed the copyright registration applications at issue because Bollin had the right and ability to supervise and/or control the wrongful actions of those individuals, and stood to derive a direct benefit therefrom by selling the Unreleased Recordings to one or more third parties, and is therefore vicariously liable for the violations of Section 1202 of the DMCA.

54.     As a result of the foregoing, the Estate is entitled to actual damages and any additional profits derived by Bollin; or in the alternative, statutory damages for each violation in an amount no less than $2,500 and no more than $25,000, plus costs and attorney's fees. 17 U.S.C. § 1203(b)(4), (5) & (c).

## COUNT V:
## UNAUTHORIZED USE OF NAME AND LIKENESS UNDER TEX. PROP. CODE § 26.013

55.     The Estate re-alleges and incorporates herein the foregoing paragraphs.

56.     Melvin Noble's name, voice, and likeness (hereinafter, the "Noble Name and Likeness Rights") had significant commercial value at the time of his death, and that commercial value has only increased since his untimely passing. The Noble Name and Likeness Rights are presently being administered by Daniel L. White, Esq. on behalf of the Estate, in accordance with the powers vested in Mr. White by the Probate Court.

57.     Pursuant to Tex. Prop. Code § 26.013, Defendant Bollin is liable to the Estate for use of the Noble Name and Likeness Rights in an unauthorized manner in connection with his efforts to exploit the Unreleased Recordings.

58.     As a result of Bollin's unauthorized use of the Noble Name and Likeness Rights, the Estate is entitled to recover the amount of any damages sustained, or $2,500, whichever is greater; the amount of Bollin's profits that are attributable to the unauthorized use; exemplary damages; and reasonable attorneys' fees, expenses and court costs. Tex. Prop. Code § 26.013.

### ATTORNEY'S FEES

59.     The Estate seeks an award of its reasonable attorney's fees incurred in connection with the adjudication of this dispute pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; 17 U.S.C. §§ 505 & 1203(b)(5); Tex. Prop. Code § 26.013, and any other applicable provision.

### JURY DEMAND

60.     The Estate asserts its rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

### PRAYER

61.     For the foregoing reasons, Plaintiff requests judgment against Defendant for the following:

A.     After notice and hearing, a preliminary and permanent injunction enjoining Defendant and all persons under his direction, control, permission or authority from disposing of, transferring, selling and/or exploiting the Vocal Tracks, Instrumental Tracks, Music Files, Musical Compositions and/or Unreleased Recordings;

B.     Declaratory relief as set forth above;

C.     An award of actual damages;

14

D.      An award of consequential damages;

E.      An award of actual damages under 17 U.S.C. §§ 504(b) and 1203(c)(2), or statutory damages under 17 U.S.C. §§ 504(c) and 1203(c)(3);

F.      An award of actual damages or statutory damages under Tex. Prop. Code § 26.013;

G.      An award of exemplary and/or punitive damages for all claims for which such damages are authorized;

H.      An order requiring disclosure and turnover of all misappropriated Music Files and Unreleased Recordings;

I.      A constructive trust for the benefit of Plaintiff to be imposed upon all funds, assets, revenues and profits that derive from the unlawful acts of Defendant;

J.      Prejudgment and post-judgment interest as permitted by law; and

K.      Reasonable attorney's fees and costs in this action;

L.      Such other and further relief as the Court may deem just, proper or necessary under the circumstances.

Dated this <u>10th</u> day of August, 2023

**AMINI & CONANT, LLP**
408 West 11th Street, Fifth Floor
Austin, Texas 78701
t: (512) 222-6883
f: (512) 900-7967


By: <u>/s/ R. Buck McKinney</u>
R. Buck McKinney
Texas Bar No. 00784572
buck@aminiconant.com
R. Alex Conant
Texas Bar No. 24074061
alex@aminiconant.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION - PLANO**

| | | |
|---|---|---|
| **ESTATE OF MELVIN NOBLE, JR.** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION # _____** |
| **vs.** | : | |
| | : | |
| **RAY GENE BOLLIN, Jr. a/k/a "DROP";** | : | |
| **d/b/a ABSOLUT PRODUCTION** | : | |
| **RECORDING STUDIOS** | : | **Jury Trial Demanded** |
| **Defendant** | : | |

### <u>DECLARATION OF ROBERT BUCKNER McKINNEY</u>

1.      "My name is Robert Buckner McKinney. I am competent to make this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct.

2.      Attached hereto as **Exhibits RBM-1, RBM-2** and **RBM-3** are true and correct copies of registration records obtained by me from the U.S. Copyright Office.

3.      I declare under penalty of perjury under the laws of the state of Texas that the above is true and correct, and that if called as a witness I could and would competently testify thereto."

EXECUTED on August 10th, 2023 in Travis County, Texas.

_____
Robert Buckner McKinney



**Copyright**
United States Copyright Office

Try the **Copyright Public Records System (CPRS)** pilot with enhanced
search features and filters.

EXHIBIT
RBM 1

| Help | Search | History | Titles | Start Over |

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = Bollin ray gene
Search Results: Displaying 4 of 4 entries



Labeled View

***All Right and 9 Other Unpublished Works.***

|  |  |
|---|---|
| **Type of Work:** | Sound Recording |
| **Registration Number / Date:** | SRu001469560 / 2021-06-06 |
| **Application Title:** | All Right and 9 Other Unpublished Works. |
| **Title:** | All Right and 9 Other Unpublished Works. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Ray Gene Bollin Jr, 1976- . Address: 2118 Wall Street, 200, 200, #130, Garland, TX, 75043, United States. |
| | Melvin G Noble Jr, 1992-2020. Address: 5954 Broadway BLVD, #130, Garland, TX, 75043, United States. |
| **Date of Creation:** | 2019 |
| **Authorship on Application:** | Ray Gene Bollin Jr, 1976- ; Domicile: United States; Citizenship: United States. Authorship: Sound Recordings. |
| | Melvin G Noble Jr, 1992-2020; Domicile: United States; Citizenship: United States. Authorship: Sound Recordings. |
| **Rights and Permissions:** | Ray G Bollin, 5954 Broadway BLVD, #130, Garland, TX, 75043, United States, (469) 756-2234, rayxbollin@gmail.com |
| **Copyright Note:** | Regarding group registration: A group of unpublished works may be registered in the same administrative class under 202.4(c) if the following requirements have been met: 1) All the works must be unpublished; 2) the group may include up to ten works; 3) a title must be provided for each work; 4) all the works must be created by the same author or the same joint authors; 5) the authorship claimed in each work must be the same; and 6) the author and claimant for each work must be the same person or organization. |
| **Contents:** | All Right. |
| | Another Nigga. |
| | Bando Money. |
| | BG4L. |
| | Bottom Of The Grave. |



Clean.

Come back.

Count It.

Doggy World.

Drama.

**Names:** Bollin, Ray Gene, Jr, 1976-
Noble, Melvin G, Jr, 1992-2020



| **Save, Print and Email (Help Page)** |
| Select Download Format   Full Record ▾   Format for Print/Save |
| Enter your email address: [                    ]   Email |

---

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page



EXHIBIT
RBM 2

Try the **Copyright Public Records System (CPRS)** pilot with enhanced search features and filters.

| Help | Search | History | Titles | Start Over |

---

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = Bollin ray gene
Search Results: Displaying 2 of 4 entries

◀ previous    next ▶

Labeled View

---

### *I'm The Man and 9 Other Unpublished Works.*

| | |
|---|---|
| **Type of Work:** | Sound Recording |
| **Registration Number / Date:** | SRu001469535 / 2021-06-06 |
| **Application Title:** | I'm The Man and 9 Other Unpublished Works. |
| **Title:** | I'm The Man and 9 Other Unpublished Works. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Ray Gene Bollin, 1976- . Address: 5954 Broadway BLVD, 130, Garland, TX, 75041, United States. |
| | Melvin Noble Jr, 1992-2020. Address: 5954 Broadway BLVD, 130, Garland, TX, 75043, United States. |
| **Date of Creation:** | 2019 |
| **Authorship on Application:** | Ray Gene Bollin, 1976- ; Domicile: United States; Citizenship: United States. Authorship: Sound Recordings. |
| | Melvin Noble Jr, 1992-2020; Domicile: United States; Citizenship: United States. Authorship: Sound Recordings. |
| **Rights and Permissions:** | Ray Gene Bollin, 5954 Broadway BLVD, 130, Garland, TX, 75043, United States, (469) 756-2234, rayxbollin@gmail.com |
| **Copyright Note:** | Regarding group registration: A group of unpublished works may be registered in the same administrative class under 202.4(c) if the following requirements have been met: 1) All the works must be unpublished; 2) the group may include up to ten works; 3) a title must be provided for each work; 4) all the works must be created by the same author or the same joint authors; 5) the authorship claimed in each work must be the same; and 6) the author and claimant for each work must be the same person or organization. |
| **Contents:** | I'm The Man. |
| | Kidnapped The Money. |
| | Landlord. |
| | My Potnas. |
| | Never Gone Forget. |

No Mo.

On me.

OSama 3 Liden.

Real Wit Me.

Rich.

**Names:** [Bollin, Ray Gene, 1976-](#)
[Noble, Melvin, Jr, 1992-2020](#)





---

[Help](#)   [Search](#)   [History](#)   [Titles](#)   [Start Over](#)

[Contact Us](#)  |  [Request Copies](#)  |  [Get a Search Estimate](#)  |  [Frequently Asked Questions (FAQs) about Copyright](#)  |
[Copyright Office Home Page](#)  |  [Library of Congress Home Page](#)



Try the **Copyright Public Records System (CPRS)** pilot with enhanced search features and filters.

EXHIBIT
RBM 3

| Help | Search | History | Titles | Start Over |
| --- | --- | --- | --- | --- |

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Author = Bollin, Ray Gene, Jr, 1976-
Search Results: Displaying 2 of 2 entries



Labeled View

***Say My Name ATWD and 9 Other Unpublished Works.***

| | |
| --- | --- |
| **Type of Work:** | Sound Recording |
| **Registration Number / Date:** | SRu001469757 / 2021-06-06 |
| **Application Title:** | Say My Name ATWD and 9 Other Unpublished Works. |
| **Title:** | Say My Name ATWD and 9 Other Unpublished Works. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Ray Gene Bollin, 1976- . Address: 5954 Broadway BLVD, 130, Garland, TX, 75043, United States. |
| **Date of Creation:** | 2019 |
| **Authorship on Application:** | Ray Gene Bollin, 1976- ; Domicile: United States; Citizenship: United States. Authorship: Sound Recordings. |
| **Rights and Permissions:** | Ray G Bollin, 5954 Broadway BLVD, 130, Garland, TX, 75043, United States, (214) 251-5362, rayxbollin@gmail.com |
| **Copyright Note:** | Regarding group registration: A group of unpublished works may be registered in the same administrative class under 202.4(c) if the following requirements have been met: 1) All the works must be unpublished; 2) the group may include up to ten works; 3) a title must be provided for each work; 4) all the works must be created by the same author or the same joint authors; 5) the authorship claimed in each work must be the same; and 6) the author and claimant for each work must be the same person or organization. |
| **Contents:** | Say My Name ATWD. |
| | She Wet. |
| | Slow Jam Freestyle. |
| | So Real. |
| | Stop Lying. |
| | Super. |
| | T Shirt. |
| | Talk. |
| | To My Enemies. |

War.

**Names:**  Bollin, Ray Gene, 1976-
Bollin, Ray Gene, Jr, 1976-



<table>
<tr><td colspan="2" align="center"><strong>Save, Print and Email (Help Page)</strong></td></tr>
<tr><td>Select Download Format  Full Record ▾</td><td>Format for Print/Save</td></tr>
<tr><td colspan="2">Enter your email address:  [                    ]  Email</td></tr>
</table>

---

Help   Search   History   Titles   Start Over

---

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page