United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| ESTATE OF MELVIN NOBLE, JR., § § *Plaintiff*, § § v. § § RAY GENE BOLLIN, JR. d/b/a ABSOLUT § PRODUCTION RECORDING STUDIOS, § and PURLIE GATES a/k/a "P.G.", § § *Defendants*. § | Civil Action No. 4:23-CV-716 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Memorandum of Law in Support of Defendants' Motion for Preliminary Injunction (Dkt. #68), which the Court construes as a Motion for Preliminary Injunction. Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

## BACKGROUND

Melvin Noble, Jr., also known as Mo3, ("Mo3") was a hip hop artist in North Texas prior to his murder in November 2020 (Dkt. #82 at p. 5). In 2019, he signed with record label Empire Distribution, Inc. ("Empire") (Dkt. #82 at p. 5). Defendant Ray Bollin ("Bollin") is an owner of Absolut Production Recording Studios (Dkt. #68 at p. 2).

On multiple occasions, Mo3 recorded at Bollin's studio (Dkt. #82 at p 6). According to the Estate:

> [Mo3] recorded at Bollin's building vocal performances of musical compositions that [Mo3] had previously written (the "Vocal Tracks"). Ex. E ¶¶ 6–7. The Vocal Tracks were recorded at [Mo3's] direction over previously created instrumental tracks that Noble provided (the "Instrumental Tracks"). During recording sessions

1

> for the Vocal Tracks, Bollin's role consisted solely of setting up a microphone and pushing the record button, and those purely technical tasks were performed under [Mo3's] specific direction, guidance, and control. After recording was complete, the digital music files containing the Vocal Tracks and Instrumental Tracks (the "Music Files") were stored on Bollin's computer for later use or forwarded to professionals for mixing and mastering. Ex. B ¶ 6; Ex. E ¶ 7. Bollin didn't perform any mixing or mastering and had no part in creating the Instrumental Tracks. Ex. B ¶ 6; Ex. E ¶¶ 6–7.

(Dkt. #82 at p. 6). The Estate alleges that Bollin was compensated for the recording sessions and has never claimed any amounts owed and due to him for recording sessions or interests in Mo3's musical works (Dkt. #82 at p. 6).

In contrast, according to Defendants, Mo3 recorded and produced under Bollin's direction (Dkt. #68 at p. 2). After the songs were recorded, mixed, and mastered, the sound recordings,[1] "arranged under Bollin's control," were stored on Bollin's computer (Dkt. #68 at p. 2).

On or about May 22, 2024, Bollin alleges he received a tip that Plaintiff Estate of Melvin Noble, Jr. ("Estate") and Empire Records are using derivative works from Bollin's copyrighted sound recordings (Dkt. #68 at p. 3). On or about May 27, 2024, the Estate and Brandon Rainwater are alleged to have hosted a listening party where sound recordings from Bollin were sampled without Bollin's permission (Dkt. #68 at p. 3).

On May 31, 2024, Mo3's album, *Legend*, was scheduled to be released (Dkt. #82 at p. 5). On May 29, 2024, Defendants filed their Memorandum of Law in Support of Defendants' Motion for Preliminary Injunction (Dkt. #68), which the Court construes as a Motion for Preliminary Injunction. Defendants requested that the Court "(a) order that the MO3 Album [*Legend*] is not released or remove infringing works; (b) order that the Estate be restrained from selling, or copying

---

[1] In Defendants' motion for preliminary injunction, "sound recordings" is capitalized as if to refer to specific sound recordings (Dkt. #68 at p. 3). However, the term is not defined in the motion, and it is unclear to the Court what specific sound recordings Defendants are referring to (*see* Dkt. #68).

the Sound Recordings or asking anyone else to do any of these things; (c) grant the Defendants such other and further relief to which the Defendants may be justly entitled" (Dkt. #68 at p. 8). On the same day, Plaintiff filed its Objection to Defendants' Request for Ex Parte Relief (Dkt. #69). On May 30, 2024, the Court set Defendants' motion for hearing on June 11, 2024, at 1:30 PM (Dkt. #70). On June 10, 2024, Plaintiff filed its Response to Defendants' Memorandum of Law in Support of Defendants' Motion for Preliminary Injunction (Dkt. #82). On June 11, 2024, the Court held the preliminary injunction hearing (*See* Dkt. #83). On June 16, 2024, Defendants filed their Closing Argument to its [sic] Request for Injunctive Relief (Dkt. #84). On June 19, 2024, Plaintiff also filed its Response to Defendants' "Closing Argument" to its Request for Injunctive Relief (Dkt. #87).

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

**I.  Defendants have not shown a substantial likelihood of success on the merits of a copyright infringement claim.**

A party seeking a preliminary injunction must present a prima facie case of its substantial likelihood to succeed on the merits of its claim. *See Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)). Here, Defendants assert entitlement to injunctive relief on their alleged copyright infringement counterclaim (Dkt. #68 at p. 4). However, Defendants have not yet asserted any copyright infringement counterclaim against the Estate (*see* Dkts. #34, #36, #50). Thus, Defendants cannot show a substantial likelihood of success on a claim not properly before the Court.

Assuming *arguendo* that a copyright infringement claim was properly asserted, Defendants have not presented a prima facie case of their substantial likelihood of success on the merits. To prevail on a claim for copyright infringement a party must show "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 549 (5th Cir. 2015).

**A.  Defendants have not sufficiently shown Bollin owns a valid copyright.**

"Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities." *Cat & Dogma, LLC v. Target Corp.*, No. 20-50674, 2021 WL 4726593, at *2 (5th Cir. Oct. 8, 2021) (citing *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994)). "A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004). However, the

presumption may be rebutted "by offering evidence to dispute the . . . prima facie case of infringement." *Cat & Dogma*, 2021 WL 4726593, at *2.

Defendants assert that Bollin is a "joint owner[ ] or exclusive licensee[ ] of copyright in the Sound Recordings . . . and each Sound Recording was timely registered with the U.S. Copyright Office" (Dkt. #68 at p. 4).[2] In support, Defendants submit the Copyright Registration for a Group of Unpublished Works titled "Eat Up and 9 Other Unpublished Works" (the "Eat Up Copyright Registration") (Dkt. #68-4). Bollin is listed as the author (Dkt. #68-4). The Eat Up Copyright Registration became effective on June 6, 2021, and contains the "Foreal" sound recording among other titles (Dkt. #68-4). Defendants also submit the Copyright Registration for a Group of Unpublished Works titled "I Got and 9 Other Unpublished Works" (the "I Got Copyright Registration") (Dkt. #84-1 at p. 2). Bollin is listed as the author (Dkt. #84-1 at p. 2). The I Got Copyright Registration became effective on May 6, 2024, and contains the "4Indi" sound recording among other titles (Dkt. #84-1).

The Estate argues that Bollin has not met the standard for claiming he is a joint owner in any sound recording (Dkt. #82 at p. 13). A "joint work" is a "work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "Authors of a joint work are initial co-owners of the copyright in the work, and are each entitled to equal undivided interest in the whole work." *Jordan v. Sony BMG Music Entm 't, Inc.*, 637 F.Supp.2d 442, 459 (S.D. Tex. 2008). However, mere collaboration does not create joint authorship. *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010

---

[2] It is unclear to the Court why Defendants might be asserting a copyright infringement claim against the Estate if Bollin and Mo3 were indeed joint owners of the works. *See Quintanilla v. Texas Television, Inc.*, 139 F.3d 494, 498 (5th Cir. 1998) (explaining joint authors cannot be liable to one another for infringement). A joint owner must only "account to other co-owners for any profits he earns from the licensing or use of the copyright." *Id.*

5


WL 4366990, at *37 (S.D. Tex. Oct. 27, 2010) (citing *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068–69 (7th Cir. 1994)). "To establish that his contributions were significant enough to make him a joint author, a party must show that he and the other party: (1) intended to create a joint work; and (2) each contributed independently copyrightable material." *Id.* (citing *Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009)).

The Estate argues that Bollin cannot have a copyright interest in Mo3's work, including any sound recordings, because Mo3 was the "sole author of the lyrics and [Mo3's] voice (not Bollin's) appears on the recordings, yet [Mo3] is not listed on the copyright" (Dkt. #82 at p. 14). Thus, the Estate claims that "the copyright is invalid on its face" (Dkt. #82 at p. 14).

At the preliminary injunction hearing, Bollin testified that he was not listed as a producer on the tracks released while Mo3 was alive (Dkt. #88, Transcript at p. 17). Bollin also agreed that he was never credited as an author or coauthor of lyrics on the tracks (Dkt. #88, Transcript at p. 20). And he agreed that he did not give vocal performances on the tracks (Dkt. #88, Transcript at p. 21). However, Bollin testified that he "own[s] the sound recording" and that he is "claiming that [he] enjoined the [vocal performance and beat] together" (Dkt. #88, Transcript at p. 23). Even so, the Estate highlights that Bollin waited two years after Mo3 passed away before filing for copyright in any sound recordings that include Mo3's voice (Dkt. #87 at p. 4). Indeed, Bollin testified as such:

> Q. Why didn't you file a copyright for any songs including [Mo3's] voice until after he died?
> A. Again -- you asked that earlier. It's to protect my interest and, of course, his as well.
> Q. Did you not want to protect your interest or his while he was alive?
> A. We had a -- we were good when he was alive. We already had the understanding, sir.

(Dkt. #88, Transcript at p. 88).

The foregoing testimony calls the validity of the copyrights at issue into question. Though copyright registration requires a presumption of ownership of a valid copyright, the Estate has successfully rebutted that presumption. Defendants have not shown a substantial likelihood of ownership of a valid copyright at this time.

**B. Defendants have not sufficiently shown copying by the Estate.**

Copying may be proven by direct or circumstantial evidence. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). "To make out a circumstantial claim, a plaintiff must prove that (1) the defendant had access to the copyrighted work before creation of the infringing work and (2) the works contain similarities that are probative of copying." *Id.* at 152. Even if access is not proven, copying may still be proven by establishing that "the two works are so strikingly similar as to preclude the possibility of independent creation." *Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 395 (5th Cir. 2001).

Defendants assert that the Estate "has copied and disseminates copyrighted works, including the lyrics to innumerable musical compositions owned and controlled by Defendant Bollin" (Dkt. #68 at p. 1). In response, the Estate argues that Defendants have not established that the Estate copied any works without authorization (Dkt. #87 at p. 4).[3]

At the preliminary injunction hearing, Bollin claimed that *Legend* includes his copyrighted sound recordings—namely "4Indi," "Foreal," and "In the Middle of the Night" (*see* Dkt. #88, Transcript at p. 19).

---

[3] The Estate also notes that it does not have fair notice of Defendants claims because "Defendants have not identified any specific tracks for the Court to address with injunctive relief in their Motion" (Dkt. #82 at p. 11). Based on Defendants' motion for a preliminary injunction, it was unclear to the Court which works Defendants were claiming infringement on. Defendants referred to copied "lyrics" as well as "Sound Recordings," but Defendants did not specify which lyrics or sound recordings they might be referring to. At the preliminary injunction hearing, Bollin's testimony shed some light on which sound recordings are at issue.

- As to "4Indi," Bollin testified that it was titled "I Cried" on *Legend* (*see* Dkt. #88, Transcript at p. 19). However, Defendants did not provide any additional evidence of similarity between the alleged copyrighted sound recording and the song included on *Legend*.

- Bollin testified that "Foreal" was included on *Legend* under a different title, but he did not know which of the songs on *Legend* infringed on his rights in "Foreal" (*see* Dkt. #88, Transcript at p. 19).

- Bollin testified "In the Middle of the Night" was included on *Legend* under a different title, but he did not testify as to which of the songs on *Legend* infringed his rights (*see* Dkt. #88, Transcript at p. 19). Additionally, Defendants did not submit a copyright registration covering any sound recording titled "In the Middle of the Night."

Based on the evidence submitted, Defendants have not shown a substantial likelihood that the Estate copied the alleged copyrighted works owned by Bollin. Without more, the Defendants cannot show that it is substantially likely that the songs "4Indi" and "I Cried" contain similarities that are probative of copying. Additionally, Bollin was unable to testify as to which song on *Legend* infringed on his rights in "Foreal." And Bollin did not submit a copyright registration for the song recording titled "In the Middle of the Night," nor did he testify as to which song on *Legend* infringed on his rights in "In the Middle of the Night." Accordingly, Defendants have not carried their burden of persuasion.

### C. Defendants have not sufficiently shown substantial similarity.

To establish substantial similarity, a party must show that the "copyrighted expressions in the two works are sufficiently alike that the copyright to the original work has been infringed."

*Armour*, 512 F.3d at 152. "A side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar." *AMID, Inc. v. Medic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 801 (S.D. Tex. 2017); *see also Nola Spice*, 783 F.3d at 550.

As previously discussed, Defendants have not provided sufficient evidence to show that the works are substantially likely to be "sufficiently alike." Thus, Defendants have not shown a substantial likelihood of success on the merits of a copyright infringement claim at this time.

## II. Defendants have not shown that they will face irreparable harm if injunctive relief is not granted.

A preliminary injunction is warranted only where a party shows they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable injury." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472–73 (5th Cir. 1985). However, "[w]here the monetary remedy is especially difficult to quantify, the injury can be labelled as irreparable." *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 596–97 (5th Cir. 2003). Copyright infringement "is typically remediable by monetary damages." *Novedea Sys., Inc. v. Colaberry, Inc.*, No. 6:20-CV-00180-JDK, 2021 WL 1418982, at *3 (E.D. Tex. Mar. 4, 2021) (citing 17 U.S.C. § 504).

Defendants have not shown that irreparable injury in the absence of injunctive relief is present here. In their Motion for Preliminary Injunction, Defendants baldly assert that Bollin will be harmed if *Legend* is released, and Bollin "cannot monetize the material [sic] is released without

his permission or a licensing agreement" (Dkt. #68 at p. 7). Defendants also assert that the Estate's alleged copying will "irreversibly harm the licensing market for lyrics, Bollin's relationships with licensees, and their goodwill with the songwriters they represent" (Dkt. #68 at p. 2).

However, in their post-hearing brief, Defendants seem to suggest that any potential damages suffered by Bollin could actually be calculated (Dkt. #84 at p. 6). Defendants underscore the preliminary injunction hearing testimony of Reshaun Finkley ("Finkley"), where Finkley was asked if damages could be calculated in the event that Bollin's rights had been infringed (Dkt. #87 at p. 3). In response to the question, Finkley answered "yes" (Dkt. #87 at p. 3). Defendants describe this testimony as "the most telling and self-destructive element of Plaintiff's presentation," and Defendants do not make any effort to refute it (Dkt. #84 at p. 6). Rather, Defendants attempt to use this testimony to bolster their argument that Bollin will suffer irreparable harm.

Because Defendants made no meaningful attempt to refute Finkley's testimony—and arguably concede that any alleged harm can be calculated—the Court is not persuaded that Defendants will suffer irreparable harm.

### III. The remaining preliminary injunction elements need not be considered.

Defendants have not shown they are entitled to the extraordinary remedy of preliminary injunctive relief. At this stage, Defendants have failed to demonstrate a substantial likelihood of success on the merits of a copyright infringement claim. Failure to satisfy this element bars injunctive relief. Defendants have also failed to demonstrate irreparable harm. The remaining preliminary injunction elements need not be considered.

## CONCLUSION

It is **ORDERED** that Defendants' Memorandum of Law in Support of Defendants' Motion for Preliminary Injunction (Dkt. #68), which the Court construes as a Motion for Preliminary Injunction, is **DENIED**.

It is further **ORDERED** that Plaintiff's Motion to Strike Evidence Attached to Defendants' Motion for Preliminary Injunction (Dkt. #81) is **DENIED as moot**.

It is further **ORDERED** that Plaintiff's Motion to Strike Defendants' Closing Argument to Its Request for Injunctive Relief (Dkt. #86) is **DENIED as moot**.

**IT IS SO ORDERED.**

SIGNED this 22nd day of July, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE