# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ESTATE OF MELVIN NOBLE, JR., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:23-cv-716 |
| RAY GENE BOLLIN, JR. d/b/a | § | Judge Mazzant |
| ABSOLUT PRODUCTION | § | |
| RECORDING STUDIOS, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Attorneys' Fees and Expenses (the "Motion") (Dkt. #265). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds Plaintiff's Motion for Attorneys' Fees and Expenses (Dkt. #265) should be **GRANTED in part**.

## BACKGROUND

The pertinent facts before the Court today exclusively relate to fees and costs. Starting on April 21, 2025, the parties participated in a multi-day jury trial (Dkt. #241). On April 28, 2025, the jury returned a verdict in favor of Plaintiff Estate of Melvin Noble, Jr. ("Plaintiff") on each of its claims against Defendant Ray Gene Bollin, Jr. d/b/a Absolut Production Recording Studios ("Defendant")[1] and against Defendant on each of his counterclaims (Dkt. # 256).[2] On May 12, 2025, the Court entered its Final Judgment (Dkt. #263).

---

[1]  Plaintiff's claims included the following: (1) Copyright Ownership; (2) Breach of Contract; (3) Conversion; (4) Copyright Infringement; (5) violation of the DMCA; (6) Unauthorized Use of Name, Voice, or Likeness; and (7) Tortious Interference (Dkt. #256).

[2]  Defendant's counterclaims included: (1) Copyright Ownership; (2) Breach of Contract; (3) Conversion; and (4) Tortious Interference (Dkt. #256).

On May 27, 2025, Plaintiff filed its Motion for Attorneys' Fees and Costs (Dkt. #265). Through it, Plaintiff seeks to recover $778,051.94 in "reasonable attorney's fees" and $4,032.56 in "remaining expenses" (Dkt. #265 at p. 9).[3] On June 17, 2025, Defendant filed its untimely Opposition to Plaintiff's Motion for Attorneys' Fees (Dkt. #269).[4] On June 24, 2025, Plaintiff filed its Reply in support of its Motion (Dkt. #270). On June 30, 2025, the Court granted Defendant's Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion (Dkt. #271) and directed the Clerk to remove and file the Sur-Reply attached to Defendant's Motion for Leave (Dkt. #272). On October 15, 2025, Defendant's Sur-Reply was filed (Dkt. #274). On October 29, 2025, the Court ordered that Plaintiff supplement its briefing and gave Defendant an opportunity to respond (Dkt. #275). The Parties complied (Dkt. #276; Dkt. #277). Plaintiff's Motion is now ripe.

## LEGAL STANDARD

After determining attorney fees are recoverable, courts use the lodestar method to calculate reasonable attorney fees. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The lodestar is calculated by multiplying the number of hours an attorney spent on the case by an appropriate hourly rate. *Id.* at 502. A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and

---

[3] Plaintiff requests $31,695.85 for related expenses incurred throughout this litigation (Dkt. #265 at p. 10). However, on May 28, 2025, Plaintiff filed its Proposed Bill of Costs (Dkt. #267), under which it recovered $27,663.29 in costs (Dkt. #268). Because of this separate award, there is only $4,032.56 in remaining expenses included in Plaintiff's Motion for Attorneys' Fees and Expenses that were not recovered through the Bill of Costs (the "Remaining Expenses") (Dkt. #265 at pp. 6, 10; Dkt. #268). These Remaining Expenses include the law firm's "in-house printing costs, research costs, and secretarial costs, among other things" (Dkt. #265 at p. 6). Plaintiff does not seek double recovery for the expenses identified in its Bill of Costs, but instead, requests the Court grant Plaintiff its Remaining Expenses only (Dkt. #265 at p. 6).

[4] Courts must liberally construe the filings of *pro se* litigants. *Windland v. Quarterman*, 578 F.3d 314, 316 (5th Cir. 2009). Thus, the Court construes Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees, which was filed as a motion, as Defendant's Response (Dkt. #269).

reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant legal community is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The lodestar is presumptively reasonable. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

The party seeking attorney fees must present adequately recorded time records. *Watkins*, 7 F.3d at 457. The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id*. The hours remaining are those reasonably expended. *Id*.

The Court then considers whether the circumstances warrant a lodestar adjustment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In making any adjustment, the Court considers the twelve *Johnson* factors. *Id*. (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id*. (citing *Johnson*, 488 F.2d at 717–19).

The most critical factor in determining reasonableness is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Hou. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (citation modified). Three of the *Johnson* factors—complexity of the issues, results obtained, and preclusion of other employment—are fully reflected in the lodestar amount. *Heidtman v. Cnty. of El Paso*, 171

F.3d 1038, 1043 (5th Cir. 1999). "[T]he court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citation modified).

## ANALYSIS

The Court's analysis will proceed in three parts. First, the Court will determine whether Plaintiff is entitled to its attorneys' fees for prosecuting each of its claims and defending itself against each of Defendant's counterclaims. Second, the Court will evaluate the reasonableness of Plaintiff's requested attorneys' fees using the lodestar method and *Johnson* factors. Third, the Court will consider Plaintiff's request for the Remaining Expenses not recovered in Plaintiff's Bill of Costs. The Court addresses each in turn.

## I.    Plaintiff is entitled to its attorneys' fees.

Plaintiff argues it is entitled to recover its attorneys' fees and related expenses under both federal and Texas state law (Dkt. #265 at pp. 2–9). Specifically, Plaintiff seeks its attorneys' fees from Defendant pursuant to the following state and federal statutes: (1) Chapter 38 of the Texas Civil Practice and Remedies Code, TEX. CIV. PRAC. & REM. CODE § 38.001(8); (2) the Texas Property Code, TEX. PROP. CODE § 26.013; (3) the Declaratory Judgment Act, 28 U.S.C §§ 2201–2; (4) the Copyright Act, 17 U.S.C §§ 504–5; and (5) the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1203(b)(4)–(5), (c)) (Dkt. #265 at pp. 1–2). Defendant argues the fees Plaintiff seeks are legally unjustified (Dkt. #269 at p. 1). The Court analyzes the state and federal laws at issue to make its own determination.

### A.    State law claims

With respect to the claims arising under Texas law, the jury determined liability for the following state law claims and counterclaims: (1) breach of contract; (2) unauthorized use of a

decedent's name, voice, or likeness; (3) conversion; and (4) tortious interference (Dkt. #256). Plaintiff argues because it was the prevailing party on its breach of contract and unauthorized use of name, image, and likeness claims, Plaintiff is entitled to recover its reasonable attorneys' fees under Chapter 38 of the Texas Civil Practice & Remedies Code and under Chapter 26 of the Texas Property Code, respectively (Dkt. #265 at p. 7). Defendant does not elaborate on why Plaintiff is not entitled its attorneys' fees nor does he argue any particular Texas law prohibits Plaintiff's recovery; instead, Defendant focuses on the reasonableness of the award Plaintiff seeks, contending Plaintiff's fee request should be denied or reduced due to a lack of specificity in the billing records and block billing practices (Dkt. #269 at pp. 2–3). Despite the absence of an argument to the contrary, the Court analyzes whether Plaintiff is entitled to its attorneys' fees for each of its state law claims and for defending itself against each of Defendant's counterclaims.

First, a party who prevails on a cause of action for breach of contract is entitled to receive its reasonable and necessary attorneys' fees from the losing party. TEX. CIV. PRAC. & REM. CODE § 38.001. Under this statute, an award for reasonable attorneys' fees to the prevailing party in a breach of contract action is mandatory, but the amount of reasonable fees is discretionary. *Fluorine on Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 866 (5th Cir. 2004). Here, Plaintiff prevailed on both its own and Defendant's breach of contract claim (Dkt. #263). Thus, Plaintiff is entitled to recover its attorneys' fees for prosecuting and for defending itself against this state law claim successfully (Dkt. #263).

Second, Chapter 26 of the Texas Property Code provides that "[a] person who uses a deceased individual's name, voice, signature, photograph, or likeness in a manner not authorized by this chapter is liable to the person who owns the property right" for the amount of any actual

damages, profits from the unauthorized use, exemplary damages that may be awarded, and "reasonable attorney's fees and expenses and court costs incurred in recovering such damages and profits." TEX. PROP. CODE § 26.013(a). Here, Plaintiff prevailed on its claim for unauthorized use of name, voice, or likeness claim under Texas Property Code § 26.011, and recovered $2,500.00 in damages (Dkt. #256). Thus, Plaintiff is entitled to recover its attorneys' fees for prosecuting this state law claim successfully (Dkt. #263).

Plaintiff was also the prevailing party on its other state law claims—tortious interference and conversion (Dkt. #256; Dkt. #263). However, in Texas, "[a] party seeking attorneys' fees must show the fees were incurred on a claim for which fees are recoverable and thus usually must segregate fees incurred on those claims from fees incurred on claims for which attorneys' fees are not recoverable." *Broesche v. Jacobson*, 218 S.W.3d 267, 277 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310, 313–14 (Tex. 2006)). Here, Plaintiff fails to brief the Court on the legal authority that ensures it can recover its attorneys' fees for the remaining state law claims nor does Plaintiff explain to the Court why it did not segregate its attorneys' fees incurred on the breach of contract and the § 26.011 claims from the fees incurred on its tortious interference and conversion claims. The Court will nonetheless make this determination for the parties as it will aid the Court in analyzing the reasonableness of the fees requested below.

Again, parties requesting their attorneys' fees are required to "segregate fees between claims for which they are recoverable and claims for which they are not." *Chapa*, 212 S.W.3d at 311. Despite this general rule, Texas law also recognizes that "if time spent on a claim for which attorneys' fees are not recoverable is inextricably intertwined with a claim for which attorneys' fees

are recoverable, attorneys' fees are recoverable for both claims." *Broesche*, 218 S.W.3d at 277 (citing *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997)); *Chapa*, 212 S.W.3d at 313–14 ("Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.").

Here, to prevail on Plaintiff's cause of action that Defendant violated § 26.011 of the Texas Property Code, for which attorneys' fees are recoverable, Plaintiff had to prove that Defendant used—without Plaintiff's consent—Melvin Noble, Jr.'s ("Noble") name, voice, signature, photograph, or likeness in any manner—including in connection with products, merchandise, or goods, or for the purpose of advertising, selling, or soliciting the purchase of products, merchandise, goods, or services. TEX. PROP. CODE § 26.011. Similarly, to prevail in its conversion claim, for which attorneys' fees are not recoverable, Plaintiff had to prove Defendant exercised dominion and control over the Vocal Tracks,[5] without its consent and to the exclusion of Plaintiff's right of possession and use. *Huffmeyer v. Mann*, 49 S.W.3d 554, 558 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.). Because exercising dominion and control over the Vocal Tracks inherently involves using Noble's name, voice, or likeness, the discrete legal services Plaintiff received advanced both its § 26.011 violation and conversion—a recoverable and unrecoverable claim (Dkt. #207 at p. 2). TEX. PROP. CODE § 26.011; *Huffmeyer*, 49 S.W.3d at 558. Thus, the attorneys' fees for the § 26.011 violation and conversion claims are so intertwined that they need not be segregated. *Chapa*, 212 S.W.3d at 313–14.

---

[5]  Noble's recordings at issue in the instant case involved the vocal performances (the "Vocal Tracks") of his previously written musical compositions over previously created instrumental tracks that Noble brought into Defendant's studio (the "Instrumental Tracks") (Dkt. #207 at p. 2). The recorded Vocal Tracks and Instrumental tracks were contained in digital files (the "Music Files") (Dkt. #207 at p. 3).

Next, to prevail on its breach of contract claim, Plaintiff had to prove Noble and Defendant entered valid and enforceable oral contracts, the terms of which required Defendant to record Vocal Tracks under Noble's guidance, direction, and control and ultimately, store the Vocal Tracks and other Music Files until requested by Nobel or Plaintiff. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Plaintiff also had to show Defendant failed to comply with these agreements. *Id.*  Separately, to prevail on its tortious interference claim, Plaintiff had to prove: (1) Noble had a valid contract with Empire Distribution, Inc. ("Empire"), the record label that signed Noble; (2) Defendant willfully and intentionally interfered with that  contract; (3) the interference proximately caused Plaintiff's injury; and (4) the Plaintiff suffered actual damage or loss. *See Cmty. Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). For Defendant to intentionally interfere with Noble's contractual relationship with Empire, Defendant had to breach his existing agreements with Noble. Thus, again, the discrete legal services rendered to advance both breach of contract and tortious interference claims need not be segregated. *Chapa*, 212 S.W.3d at 313–14.

Plaintiff also need not segregate the attorneys' fees it incurred to defend itself against Defendant's counterclaims for conversion and tortious interference because the facts related to this defense were inextricably intertwined with the successful prosecution of those same claims against Defendant and the successful prosecution of the § 26.011 and breach of contract claims. *See Chapa,* 212 S.W.3d at 313–14; *see also Park Cities Ltd. P'ship v. Transpo Funding Corp.,* 131 S.W.3d 654, 662 (Tex. App.—Dallas 2004, pet. denied) (concluding claim and counterclaim were inextricably intertwined because for party to prevail on its claim, it had to oppose and defeat the counterclaim); *Coleman v. Rotana, Inc.,* 778 S.W.2d 867, 874 (Tex. App.—Dallas 1989, writ denied) (same).

Accordingly, under Texas law, Plaintiff is entitled to its attorneys' fees for prosecuting each of its state law claims and defending itself against each of Defendant's state law counterclaims.

**B.      Federal law claims**

The Court next analyzes the claims arising under federal law. Plaintiff prevailed on its claims for copyright infringement under the Copyright Act and for violation of the DMCA (Dkt. #256; Dkt. #263). Plaintiff also prevailed on its demand for a declaratory judgment against Defendant regarding the authorship and ownership rights of the Vocal Tracks at issue (Dkt. #256; Dkt. #263). Under the Copyright Act and the DMCA, courts have discretion to award "reasonable" attorney fees to the "prevailing party" in cases brought under either Act, and courts award attorney fees on a case-by-case basis in copyright infringement actions. 17 U.S.C. §§ 505, 1203(b)(5); *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534–35 (1994).

Specifically, in considering whether to award attorney fees under § 505, courts weigh a nonexclusive list of factors including: (1) frivolousness, (2) motivation, (3) objective unreasonableness, and (4) the need for compensation and deterrence. *Id.* at 534 n.19 (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (1986)). Substantial weight is given to the objective reasonableness factor. *Kirstaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016). Because an award of attorney fees "is common, but not automatic, in copyright infringement cases," the Court applies the *Fogerty* factors to determine whether Plaintiff's attorneys' fees should be awarded. *Recursion Software, Inc. v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2013 WL 12403528, at *2 (E.D. Tex. Jan. 3, 2013). The instant case presents a unique situation in which Plaintiff both prevailed in prosecuting its own copyright claims against Defendant and in defending itself against Defendant's copyright counterclaims against Plaintiff (Dkt. #263). Guided by the *Fogerty* factors, the Court finds that Plaintiff is entitled to attorneys' fees and costs.

9

First, Plaintiff's suit was not frivolous or objectively unreasonable. A copyright claim is more likely to be found frivolous or objectively unreasonable when it obviously lacks substance. *Recursion*, 2013 WL 12403528, at *3. Plaintiff's copyright claims were neither frivolous nor objectively unreasonable due to the legal and factual support that Noble was the sole author of the works at issue and a finding that Defendant was not a joint author or co-owner of any sound recording that includes the Vocal Tracks (Dkt. #265 at p. 3). The jury in the instant case ultimately agreed with Plaintiff (Dkt. #256), and Defendant failed to offer the Court any indicia of frivolousness or unreasonableness. Because Plaintiff's claims were intended to enforce its own copyright privileges in Noble's works, Plaintiff's copyright claims were neither frivolous nor objectively unreasonable.

Second, Plaintiff alleges it had a proper motive for filing and prosecuting its copyright claims (Dkt. #265 at p. 3). Defendant did not provide the Court or direct the Court to any record suggesting Plaintiff brought its suit with malicious intent. On the contrary, the Court agrees that Plaintiff brought the suit to protect Noble's intellectual property rights (Dkt. #265 at p. 3).

Third, Plaintiff alleges that awarding the requested fees and costs advances both considerations of compensation and deterrence (Dkt. #265 at pp. 3–4). Plaintiff did not recover any monetary damages for Defendant's copyright infringement and recovered $2,500.00 for its violation of the DMCA (Dkt. #256). However, Plaintiff's main goal was "to obtain injunctive and declaratory relief definitively establishing [Plaintiff's] sole right to the vocal tracks in issue" (Dkt. #270 at p. 3), which it obtained (Dkt. #263). If this Court were to grant the Motion, an award of attorneys' fees against Defendant would deter future infringement because copyright owners, if they are successful in prosecuting their § 505 and DMCA claims, would not have to pay for legal

representation out of pocket to protect their intellectual property. *See Capitol Recs., Inc. v. Lyons*, No. CIV.A.3:03-CV-2018-L, 2004 WL 1732324, at *6 (N.D. Tex. Aug. 2, 2004).

Accordingly, because all *Fogerty* factors weigh in favor of an award, Plaintiff is also entitled to its attorneys' fees and costs for prevailing on its federal claims against Defendant arising under the Copyright Act and the DMCA.

## II.    Plaintiff attorneys' fees are reasonable.

Having determined that Plaintiff is entitled to its attorneys' fees, the Court's next task is to determine the amount of attorneys' fees Plaintiff should recover. Plaintiff requests an award of $778,051.94 for reasonable attorneys' fees, comprised of $743,433.00 in fees due to Bell Nunnally & Martin, LLP ("Bell Nunnally") and $34,608.94 in fees due to former counsel Amini & Conant, LLP ("Amini") (Dkt. #265 at p. 5). Specifically, Plaintiff provided the Court with the following breakdown of fees billed to Plaintiff by Amini and Bell Nunnally attorneys and paralegals throughout the course of this litigation:

| Attorney | Year | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Bell Nunnally | | | | |
| Brent A. Turman | 2023 | 62.30 | $575.00 | $35,822.50 |
| | 2024 | 169.20 | $605.00 | $102,366.00 |
| | 2025 | 222.80 | $640.00 | $142,592.00 |
| Troy L. Hales | 2023 | 95.30 | $515.00 | $49,079.50 |
| | 2024 | 222.50 | $560.00 | $124,600.00 |
| | 2025 | 202.30 | $620.00 | $125,426.00 |
| Jeffrey S. Lowenstein | 2023 | 2.00 | $775.00 | $1,550.00 |
| Beverly A. Whitley | 2024 | 0.20 | $800.00 | $160.00 |
| Christian J. Cowart | 2023 | 1.90 | $500.00 | $950.00 |
| | 2024 | 0.40 | $535.00 | $214.00 |
| Danica L. Mathes | 2023 | 1.70 | $635.00 | $1,079.50 |
| Laura K. Lavernia | 2024 | 14.90 | $470.00 | $7,003.00 |
| Meredith N. Palmer | 2024 | 163.90 | $425.00 | $69,657.50 |
| | 2025 | 168.60 | $450.00 | $75,870.00 |

| | | | | |
|---|---|---|---|---|
| Mackenzie M. Arnold | 2025 | 3.40 | $430.00 | $1,462.00 |
| LaDonna G. Arey (Paralegal) | 2024 | 8.80 | $280.00 | $2,464.00 |
| | 2025 | 0.20 | $295. 00 | $59.00 |
| Peter T. Tishuk (Paralegal) | 2024 | 1.30 | $280.00 | $364.00 |
| | 2025 | 1.10 | $295.00 | $324.50 |
| NéKeita L. Summerville (Paralegal) | 2025 | 30.00 | $240.00 | $7,200.00 |
| Rebecca L. Jones (Paralegal) | 2023 | 9.10 | $265.00 | $2,411.50 |
| | | | Discounts Applied | $(7,212.00) |
| | | | Bell Nunally Subtotal | $743,443.00 |
| **Amini** | | | | |
| Buck McKinney | 2023 | 83.10 | $425.00 | $35,317.50 |
| Jared Greathouse | 2023 | 0.9167 | $425.00 | $389.60 |
| Allison Steele | 2023 | 9.3833 | $290.00 | $2,721.16 |
| Reese Pyle (Paralegal) | 2023 | 4.0834 | $150.00 | $612.54 |
| | | | Discounts Applied | $(4,431.86) |
| | | | Amini Subtotal | $34,608.94 |
| **Total Amount of Attorneys' Fees Requested:** | | | | $778,051.94 |

(Dkt. #276 at pp. 2–3; Dkt. #265-3; Dkt. #265-4).

Based on the above calculation, Plaintiff requests $778,051.94 in attorneys' fees. Plaintiff's request for $778,051.94 in attorneys' fees is supported by the billing records attached to Plaintiff's Motion and by the Declaration of Brent A. Turman ("Turman Declaration"), Plaintiff's principal Bell Nunnally attorney (Dkt. #265-1 Dkt. #265-3; Dkt. #265-4). Turman declares: "[t]he fees Plaintiff's counsel charged are those customarily charged in this area for the same or similar services by an attorney with equivalent experience, reputation, and ability, considering the nature of the controversy, the time limits imposed, the results obtained compared with results in similar cases, and the nature and length of counsel's relationship with [Plaintiff]" (Dkt. #265-1 at ¶ 12). Turman also declares he reviewed each of the Bell Nunnally billing statements attached to the Declaration and that these billing records accurately reflect the time spent by each timekeeper on

the matter, the tasks performed, billing rates, and dates of each task (Dkt. #265-1 at ¶ 5), and that the Amini billing records provided to the Court reflect similar information (Dkt. #265-1 at ¶ 7). Plaintiff also requests $25,000.00 in conditional attorneys' fees to defend post-judgement motions and $175,000.00 in conditional attorneys' fees should the case be appealed (Dkt. #265 at p. 10).

Plaintiff does not expressly request an upward adjustment of the lodestar (Dkt. #265). However, the Turman Declaration addresses some of the *Johnson* factors (Dkt. #265-1). Specifically, Turman asserts (1) the attorneys' fees incurred are commensurate with the skill required to perform legal services necessary in this case; (2) Bell Nunnally was not precluded from accepting engagement from other potential clients besides the other parties in this case; (3) the fee for the attorneys' services performed on behalf of Plaintiff are customary and reasonable for similar work in the Eastern District of Texas and Grayson County for attorneys of comparable skill and understanding of the issues identified; (4) the attorneys' fees requested were quoted to Plaintiff as a fixed hourly fee; (5) the attorneys' fees requested correspond with the expertise, skill, and ability of the respective attorneys, especially considering Turman has been primarily engaged in the practice of commercial, entertainment, and intellectual property litigation since 2012; (6) Plaintiff's attorneys applied discretionary billing discounts or reductions throughout the course of this litigation, some of which are reflected in the billing records (Dkt. #265-1 at ¶¶ 12–20).

Defendant does not address this directly, but "'the most critical factor' in determining the reasonableness of an attorneys' fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). Plaintiff achieved success at trial and the jury awarded Plaintiff the declaratory relief it requested. Although Plaintiff did not obtain a large

monetary award, the high degree of skill and labor involved to obtain that verdict justifies the fee award that Plaintiff now seeks.[6]

Despite this, Defendant objects to the amount of attorneys' fees Plaintiff requests on three broad grounds. First, Defendant contends Plaintiff's motions and filings were "redundant, excessive, or resulted from their own failure to confer—not Defendant's actions," and Plaintiff's "discovery posture" contributed to the cost of litigation it incurred (Dkt. #269 at pp. 3–4). Second, Turman's Declaration "summarize[s] totals without providing the necessary specificity," thus, failing to provide the Court with meticulous billing records devoid of vague or block billing (Dkt. #269 at pp. 3–4). Third, Defendant argues Plaintiff's request for conditional appellate fees is speculative and unsupported at this stage (Dkt. #269 at p. 4). For these reasons, Defendant requests the Court to substantially reduce any award of fees but does not argue what that reduction should be (Dkt. #269 at p. 4).

### A.    Hours Billed

Before addressing Defendant's first objection, the Court notes Defendant does not contest the hourly rates of Plaintiff's attorneys (Dkt. #269). Defendant only asserts that the proposed rate must be reasonable for the relevant market (Dkt. #269 at p. 3). In making this determination, "the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *See Tollett*, 285 F.3d at 367–68. However, "the district court is itself an expert in assessing these matters." *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976) (citing *Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 98 (5th Cir. 1972)) ("The court is

---

[6] "The amount of damages a plaintiff recovers is only one of many factors that a court must consider when calculating an award of attorneys' fees. An attorneys' fee award does not need to be commensurate with the actual amount of dollars awarded to the plaintiff." *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 663 (5th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 26, 2002).

itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value."). Here, because Defendant does not specifically argue Plaintiff's attorneys' rates are inflated, they are prima facie reasonable. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995). Further, the Court finds that Plaintiff's attorneys' rates—ranging from $240 (paralegal) to $800 (partner)—are reasonable (Dkt. #265-1 at ¶ 12; Dkt. #265-3; Dkt. #265-4).[7]

Having determined that Plaintiff's counsel charged reasonable hourly rates, the Court turns to the reasonableness of the number of hours billed. Defendant argues Plaintiff exacerbated its own litigation costs because "[Plaintiff] refused to resolve authorship disputes informally," "[Plaintiff] expanded claims midway through litigation," "[Plaintiff] resisted meaningful discovery on ownership and metadata," "[Plaintiff's] own agents made contradictory public statements," and "[Plaintiff] sought declaratory relief, then claimed it was 'not about the money'" (Dkt. #274 at p. 2). The Court will focus on Defendant's contention that Plaintiff's motion practice and withholding of discovery contributed to its own costs (Dkt. #269 at pp. 3–4; Dkt. #274 at p. 2).

The Bell Nunnally attorneys billed approximately 1,407.30 hours in this lawsuit, and the Amini attorneys billed approximately 97.40 hours (Dkt. #265 at p. 6; Dkt. #265-1 at ¶ 12). Turman declares that the success obtained through this lawsuit required, among other things, that Plaintiff's attorneys engage in "claims and damages analysis, written discovery, depositions, motion practice, researching and developing arguments specific to the legal issues presented in this

---

[7]  The Court has previously held hourly rates ranging from $450 to $860 were reasonable. *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892 (E.D. Tex. 2017).

case, preparation for trial, a mediation, a jury trial, and limited post-trial research and briefing" (Dkt. #265-1 at ¶ 10). The Court agrees.

However, the Court also notes that Plaintiff incurred legal fees for unsuccessfully defending itself against Defendant's various motions. *Sade v. S. Univ. Sys.*, No. CV 02-1164-A-M2, 2005 WL 8155807, at *8 (M.D. La. Sept. 28, 2005) ("Since work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved,' the Court finds that plaintiff's counsel should not be awarded attorney's fees for the work he performed in unsuccessfully defending against a post-trial motion . . . .") (quoting *Hensley*, 461 U.S. at 435–436). Specifically, Defendant filed the following motions—including two motions to compel Plaintiff to produce discovery—which the Court granted: (1) Motion for Leave to Amend Answer (Dkt. #49; Dkt. #113); (2) Motion for Extension of Time to Respond (Dkt. #67; Dkt. #111); (3) Motion to Modify the Existing Scheduling Order with Regard to the Dispositive Motion Deadline (Dkt. #62; Dkt. #110); (4) Motion to Compel (Dkt. #94; Dkt. #160); (5) Motion to Compel (Dkt. #105; Dkt. #160); (6) Motion for Leave to take Depositions (Dkt. #106; Dkt. #160); (7) Motion for Leave to Amend Motion for Sanctions (Dkt. #193; Dkt. #208).

In contrast, Plaintiff also incurred legal fees for successfully defending itself against Defendant's motion practice. For example, Defendant filed the following motions, including two dispositive motions and a motion seeking injunctive relief, which the Court denied: (1) Motion to Dismiss (Dkt. #45; Dkt. #113); (2) Motion for Summary Judgment (Dkt. #122; Dkt. #207); (3) Motion for Sanctions (Dkt. #194; Dkt. #208); (4) Motion to Stay Mediation (Dkt. #174; Dkt. #195); (5) Motion for Leave to Amend Counterclaims and Join Additional Parties (Dkt. #179; Dkt. #210); and (6) Motion for Preliminary Injunction (Dkt. #68; Dkt. #95). Moreover, Plaintiff prevailed

16

entirely or partially on the following motions it filed against Defendant: (1) Motion to Strike Defendants' Designated Experts (Dkt. #85; Dkt. #206); (2) Motion to Strike Defendants' Designated Expert Virgil Roberts (Dkt. #171; Dkt. #206); and (3) Motion to Compel Inspection, Inventory, and Copy (Dkt. #90; Dkt. #170).

Having determined that both parties' motion practices contributed to the increased costs in this litigation, the Court lastly notes that Plaintiff's attorneys demonstrated billing judgment. As timekeepers with the greatest amount of hours billed, attorneys Brent Turman, Troy Hales, and Meredith Palmer regularly noted in their time entries that they worked more than they were billing for to provide Plaintiff with deductions in the fees they were incurring (*See, e.g.*, Dkt. #265-3 at p. 5 ("worked over 4 hours, but billing less")). Further, the Turman Declaration states Plaintiff's lead counsel "applied discretionary billing discounts or reductions throughout the course of this litigation" (Dkt. #265-1 at ¶ 19).[8] Thus, because Plaintiff's attorneys exercised their professional judgment to disregard certain time and provide Plaintiff with deductions to the attorneys' fees incurred, the Court is satisfied with Plaintiff's explanation as to the reasonableness and necessity of the 1,504.70 hours billed to bring this suit to completion (Dkt. #265 at p. 6; Dkt. #265-1 at ¶ 12).

### B.    Billing Records

Second, Defendant argues Texas law requires Plaintiff provide strict proof of the attorneys' fees it requests, including documentation of each time entry, identity of the professional doing the work, specificity as to the task and necessity, and a reasonable hourly rate for the market (Dkt. #269 at p. 3). The Court is satisfied with the billing records attached to the Turman Declaration (Dkt. #265-1; Dkt. #265-3; Dkt. #265-4). The billing records identify the timekeeping attorney or

---

[8]  For example, Plaintiff's counsel reduced the amount of attorneys' fees by $7,212.00 to exclude fees incurred for preparing and submitting a Motion to Dismiss former defendant, Purlie Gates (Dkt. #265-1 at ¶ 20).

paralegal, the work completed, and the time expended on the tasks (Dkt #265-3; Dkt. #265-4). Further, for the reasons outlined above, the hourly rates are reasonable.

Lastly, Defendant seemingly also challenges the billing statements because they include block billing (Dkt. #269 at p. 3). In the Fifth Circuit,

> [W]e are mindful that practical considerations of the daily practice of law in this day and age preclude "writing a book" to describe in excruciating detail the professional services rendered for each hour or fraction of an hour. We also recognize that, in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry.

*La. Power & Light Co.*, 50 F.3d at 327.

Although it is true that block billing is not best practice,[9] the Court is satisfied with Plaintiff's time records here. Accordingly, Plaintiff provided the Court with the necessary specificity to calculate an accurate lodestar.

## C.    Conditional Fees

Third, Plaintiff requests $25,000.00 in reasonable and necessary attorneys' fees if Plaintiff must defend a post judgment motion challenging the Court's Final Judgment (Dkt. #265-1 at ¶ 24). Plaintiff also requests $145,000.00 in reasonable and necessary attorneys' fees if it becomes necessary for the Estate to defend an appeal to the U.S. Court of Appeals for the Fifth Circuit and $30,000.00 in reasonable and necessary attorneys' fees to present oral argument in this matter on appeal (Dkt. #265-1 at ¶¶ 25–26). Defendant argues that these requests for conditional fees are neither mandatory nor reasonable under federal or Texas law (Dkt. #269 at p. 4). However, under

---

[9] "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation. When time records are block billed, the court cannot accurately determine the number of hours spent on any particular task, and the court is thus hindered in determining whether the hours billed are reasonable." *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *5 (N.D. Tex. Dec. 20, 2005) (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

Texas law, "an award of attorneys' fees may include conditional fees for an appeal provided there is evidence of the reasonableness of fees for appellate work to support the award." *City of San Antonio v. Hotels.com, L.P.*, No. 5-06-CV-381-OLG, 2017 WL 1382553, at *16 (W.D. Tex. Apr. 17, 2017).

As to the argument that Plaintiff's requested appellate fees are not reasonable, Defendant argues Plaintiff made this request without any estimate of actual time required, a breakdown of specific tasks, or demonstrating the necessity or likelihood of these conditional fees (Dkt. #274 at p. 3). This is not true. The Turman Declaration outlines the attorneys' services that would be required if Plaintiff needed to defend a post-judgment motion, defend an appeal, and present an oral argument before the Fifth Circuit (Dkt. #265-1 at ¶¶ 25–26). For these reasons, the Court determines that conditional appellate and post judgment motion fees are reasonable.

### III.    Plaintiff is not entitled to its Remaining Expenses.

Plaintiff also requests that the Court grant its Remaining Expenses totaling $4,032.56, which were not included in Plaintiff's Bill of Costs (Dkt. #265 at p. 5 n.1). These Remaining Expenses "include in-house printing costs, research costs, and secretarial costs, among other things." (Dkt. #265 at p. 5 n.1). Defendant did not challenge the reasonableness of these expenses; however, awardable costs are set forth by federal statute. *See* 28 U.S.C. § 1920. Further, the United States "Supreme Court has indicated that federal courts may only award those costs articulated in § 1920 absent explicit statutory or contractual authorization to the contrary." *Cook Child.'s Med. Ctr. v. The N. Engl. PPO Plan of Gen. Consolidation Mgmt. Inc.*, 491 F.3d 266, 274 (5th Cir. 2007). Here, Plaintiff has not provided the Court with legal authority that justifies awarding the Remaining Expenses omitted from § 1920 (Dkt. #265). Accordingly, the Court finds that Plaintiff is not entitled to its Remaining Expenses.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Attorneys' Fees and Expenses (Dkt. #265) is hereby **GRANTED in part.**

Plaintiff is hereby awarded its attorneys' fees in the amount of $778,051.94.

All other relief not expressly granted is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 21st day of November, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE